**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| YERBOL ORYNBAYEV and UCONINVEST LLC, | |
| *Plaintiffs*, | Civil Action No. 1:25-cv-1172-RDA-WEF |
| v. | |
| JYSAN HOLDING LLC; JUSAN TECHNOLOGIES LTD.; NEW GENERATION FOUNDATION, INC.; MASUDAL RONY ("RON") WAHID; LORD DAVID CHARLES EVANS OF WATFORD; CHRISTIAN MARTIN BOERNER; AIDOS BEKTURGANOV; and GALYMZHAN YESSENOV, | |
| *Defendants*. | |

**REPLY IN SUPPORT OF
JYSAN GROUP DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

I.     PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ..................................................................................................2

     A.     Plaintiffs Fail to Allege Cognizable RICO Injury ...................................................2

          1.     Plaintiffs Cannot Recover for an Indirect, Derivative Injury in the Form of Diminution of Share Value in JTL.................................................2

          2.     Plaintiffs' Claimed Share-Value Injury Is Also Impermissibly Foreign ...........................................................................................................7

          3.     Plaintiffs' Allegations of Fraudulent Acquisition of JTL Shares Are Barred by the PSLRA ..............................................................................9

          4.     Plaintiffs' Remaining Allegations Do Not State Any Cognizable Injury to Business or Property ...................................................................10

     B.     Plaintiffs Fail to Plead RICO's Pattern Requirement ............................................12

     C.     Plaintiffs Fail to Plead a RICO Enterprise.............................................................13

     D.     Plaintiffs' Allegations of Individual Predicate Acts Are Insufficient....................14

     E.     Plaintiffs' RICO Conspiracy Claim Should Be Dismissed Because the Substantive RICO Claim Fails to State a Claim......................................................15

II.     PLAINTIFFS' CLAIM FOR VIRGINIA BUSINESS CONSPIRACY SHOULD BE DISMISSED ..................................................................................................16

III.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ...........................18

IV.     DEFENDANTS EVANS AND BOERNER SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.........................................................................19

CONCLUSION....................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahn v. Hanil Dev., Inc.*,
471 F. App'x 615 (9th Cir. 2012) ........................................................................6

*At The Airport v. ISATA, LLC*,
438 F. Supp. 2d 55 (E.D.N.Y. 2006) ....................................................................5

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*,
189 F.3d 321 (3d Cir. 1999)...............................................................................10

*Bixler v. Foster*,
596 F.3d 751 (10th Cir. 2010) ...................................................................7, 12, 13

*Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*,
417 F. Supp. 3d 531 (E.D. Pa. 2019) ..................................................................13

*Boone v. Carlsbad Bancorporation, Inc.*,
972 F.2d 1545, 1556 (10th Cir. 1992) .................................................................13

*Boyle v. United States*,
556 U.S. 938 (2009)...........................................................................................13

*Brink's Mat Ltd. v. Diamond*,
906 F.2d 1519 (11th Cir. 1990) ..........................................................................19

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)...........................................................................................20

*Buschi v. Kirven*,
775 F.2d 1240 (4th Cir. 1985) ...........................................................................16

*C.D.S., Inc. v. Zetler*,
288 F. Supp. 3d 551 (S.D.N.Y. 2017).................................................................4

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
561 F.3d 273 (4th Cir. 2009) .............................................................................20

*Cozzarelli v. Inspire Pharms. Inc.*,
549 F.3d 618 (4th Cir. 2008) .............................................................................18

*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*,
528 F.3d 1001 (8th Cir. 2008) .............................................................................2

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013)......................................................................................................13

*Deck v. Engineered Laminates*,
    349 F.3d 1253 (10th Cir. 2003) ...............................................................................................11

*Dusek v. JPMorgan Chase & Co.*,
    832 F.3d 1243 (11th Cir. 2016) ...............................................................................................10

*ESAB Grp., Inc. v. Centricut, Inc.*,
    126 F.3d 617 (4th Cir. 1997) ...................................................................................................19

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994)..........................................................................................................9

*GE Inv. Priv. Placement Partners II v. Parker*,
    247 F.3d 543 (4th Cir. 2001) ...................................................................................................16

*Grubbs v. Sheakley Grp., Inc.*,
    807 F.3d 785 (6th Cir. 2015) ...................................................................................................16

*Harris v. Orange S.A.*,
    636 F. App'x 476 (11th Cir. 2015) ............................................................................................5

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) ...................................................................................................15

*Inman v. Klockner-Pentaplast of Am., Inc.*,
    467 F. Supp. 2d 642 (W.D. Va. 2006) .....................................................................................17

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*,
    46 F.3d 258 (3d Cir. 1995)........................................................................................................13

*Johnson v. Navy Fed. Credit Union*,
    No. 1:22-CV-01451, 2023 WL 6964052 (E.D. Va. Oct. 20, 2023).........................................18

*Khazai v. Grover*,
    No. 2:22-CV-00100-SPG-KS, 2023 WL 12036688 (C.D. Cal. Apr. 20, 2023) ........................4

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018).......................................................................................................11

*Lexcadia Cap., LLC v. Next Generation Fund*,
    LLC, 71 Va. Cir. 83 (2006).......................................................................................................17

*Manhattan Telecomms. Corp. v. DialAmerica Mktg., Inc.*,
    156 F. Supp. 2d 376 (S.D.N.Y. 2001).....................................................................................14

*Manson v. Stacescu,*
    11 F.3d 1127 (2d Cir. 1993)................................................................................2, 5

*Med. Marijuana, Inc. v. Horn,*
    604 U.S. 593 (2025)..........................................................................................10

*Midwest Grinding Co. v. Spitz,*
    976 F.2d 1016 (7th Cir. 1992) .............................................................................1

*Miranda v. Ponce Fed. Bank,*
    948 F.2d 41 (1st Cir. 1991)..................................................................................1

*MLSMK Inv. Co. v. JP Morgan Chase & Co.,*
    651 F.3d 268 (2d Cir. 2011)...............................................................................10

*Nationwide Mut. Fire Ins. Co. v. Jones,*
    577 F. Supp. 968 (W.D. Va. 1984) .....................................................................16

*Natomas Gardens Inv. Grp. LLC v. Sinadinos,*
    No. CIV.S-08-2308FCD/KJM, 2009 WL 1363382 (E.D. Cal. May 12, 2009)....................3, 4

*NCNB Nat. Bank of N.C. v. Tiller,*
    814 F.2d 931 (4th Cir. 1987), *overruled on other grounds, Busby v. Crown
    Supply, Inc.,* 896 F.2d 833 (4th Cir. 1990) ..........................................................2

*Nordberg v. Lord, Day & Lord,*
    107 F.R.D. 692 (S.D.N.Y. 1985) .........................................................................5

*Percival Partners Ltd. v. Nduom,*
    99 F.4th 696 (4th Cir. 2024) ............................................................................7, 8

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993)..........................................................................................14

*Sedima, S.P.R.L. v. Imrex Co.,*
    473 U.S. 479 (1985).................................................................................9, 11, 12

*Shirvinski v. U.S. Coast Guard,*
    673 F.3d 308 (4th Cir. 2012) .............................................................................17

*Simmons v. Miller,*
    544 S.E.2d 666 (Va. 2001).................................................................................17

*Snow Ingredients, Inc. v. SnoWizard, Inc.,*
    833 F.3d 512 (5th Cir. 2016) .............................................................................11

*Stauffacher v. Bennett,*
    969 F.2d 455 (7th Cir. 1992) .............................................................................19

*Stochastic Decisions, Inc. v. DiDomenico*,
  995 F.2d 1158 (2d Cir. 1993)........................................................................................11

*Tal v. Hogan*,
  453 F.3d 1244 (10th Cir. 2006) ....................................................................................16

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
  845 A.2d 1031 (Del. 2004) .............................................................................................4

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v.*
  *Walgreen Co.*,
  719 F.3d 849 (7th Cir. 2013) ........................................................................................14

*Van Velzer v. Amegy Bank*,
  713 F. App'x 377 (5th Cir. 2018) .................................................................................15

*Vicon Fiber Optics Corp. v. Scrivo*,
  201 F. Supp. 2d 216 (S.D.N.Y. 2002)............................................................................9

**Statutes**

18 U.S.C. § 1962(c) ..............................................................................................9, 11, 13

18 U.S.C. § 1964(c) ....................................................................................................9, 10

18 U.S.C. § 1965(d) ..........................................................................................................19

28 U.S.C. § 1367(c)(3)......................................................................................................16

Private Securities Litigation Reform Act (PSLRA), Pub. L. No. 104-67, 109 Stat.
  737 (1995)..............................................................................................................1, 9, 10

Virginia Code § 8.01-328.1 .............................................................................................19

Virginia Code § 18.2-499 ...........................................................................................16, 18

Virginia Code § 18.2-500 .......................................................................................16, 17, 18

**Rules**

Federal Rule of Civil Procedure 9(b)...........................................................................14, 15

Federal Rule of Civil Procedure 12(b)(6) .........................................................................15

**INTRODUCTION**

Plaintiffs' opposition serves only to underscore what is apparent from their Complaint: this litigation is a patent misuse of the RICO statute, with Plaintiffs attempting "to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992). Indeed, the Court need look no further than Plaintiffs' own prior parallel action in the UK—a shareholder dispute invoking UK corporate law to recover based on the same alleged conduct—to see that is exactly what Plaintiffs are doing here. Despite Plaintiffs' protestations, they are in reality seeking to deploy their federal RICO claims—"the litigation equivalent of a thermonuclear device," *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)—to bring the specter of treble damages to bear in litigating this shareholder dispute governed by UK corporate law.

This Court should reject that gambit and grant the Jysan Group Defendants' motion to dismiss, so that this dispute can be litigated where it belongs—in the pending UK litigation that Plaintiffs themselves initiated more than a year and a half ago. The Complaint flies in the face of binding Fourth Circuit precedent by seeking to recover for alleged harm to JTL—a UK company—that could have injured Plaintiffs only derivatively on account of their direct and indirect shareholding interests in JTL. The Complaint runs headlong into the PSLRA's explicit directive that alleged securities fraud cannot be used to support a RICO claim. And, not surprisingly, the Complaint falls woefully short of alleging a coherent RICO violation—there is no pattern, no RICO enterprise, and no colorable RICO predicate acts that have been pled. To the contrary, to try to cobble together a RICO enterprise capable of ongoing criminality, Plaintiffs have gone so far as to name as defendants the very entities they claim were "looted" by the RICO enterprise—NGF, the "charitable endowment" that was supposedly the main target of the alleged scheme, its wholly owned subsidiary, JH, and its over 90%-owned indirect subsidiary, JTL. Plaintiffs do not even

attempt to address the circular, and logically impossible, nature of their own allegations, which exposes this case as a misguided attempt to repackage a UK corporate dispute as a RICO claim.

These meritless claims should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

The Jysan Group Defendants' opening memorandum explained (at 7-19) that Plaintiffs' RICO claims are flawed on multiple grounds that are independently sufficient to require dismissal. Plaintiffs' opposition does nothing to undermine that showing.

#### A. Plaintiffs Fail to Allege Cognizable RICO Injury

##### 1. Plaintiffs Cannot Recover for an Indirect, Derivative Injury in the Form of Diminution of Share Value in JTL

Plaintiffs have no answer to the blackletter rule that a stockholder plaintiff cannot invoke the RICO statute to recover for injuries suffered by the company based on the *indirect* injury the stockholder suffers on account of the reduced value of its shares. *See* Memo. 8-10; *see also, e.g.*, *NCNB Nat. Bank of N.C. v. Tiller*, 814 F.2d 931, 937-38 (4th Cir. 1987), *overruled on other grounds, Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990); *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1024-25 (8th Cir. 2008). Indeed, Plaintiffs concede that "shareholders cannot sue for harm suffered by the corporation or all investors collectively." Opp. 15. Plaintiffs nonetheless contend (Opp. 13) that their claims fall within the "exception to the general rule . . . where the injury sustained by the shareholder is separate and distinct from that sustained by other shareholders." *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993). That contention is flawed on numerous grounds.

First of all, contrary to Plaintiffs' suggestion, the vast majority of the harm alleged in their Complaint was suffered directly *by JTL*, and does not give rise to any "separate and distinct" injury

uniquely felt by Plaintiffs. Critically, the Complaint alleges that the value of Uconinvest's shareholding in JTL was "obliterated" by the June 2023 settlement with Yessenov, which allegedly undervalued JTL's assets at just 5% of their "known value." Compl. ¶ 115. The Complaint also alleges that the Jysan Group Defendants "siphon[ed] off vast sums" of JTL's assets by awarding themselves excessive compensation from the company. *Id.* ¶ 80. Those alleged harms are obviously harms *to JTL* that would affect all its shareholders only indirectly and on a pro rata basis—and Plaintiffs do not contend otherwise. Thus, at an absolute minimum, Plaintiffs' RICO claims should be dismissed insofar as they seek damages for JTL's settlement with Yessenov or allegedly excessive compensation paid from JTL's assets.

Plaintiffs cannot avoid that result by stressing (Opp. 13) Uconinvest's status as the only minority shareholder in JTL that was allegedly excluded from compensation in the transactions that Plaintiffs challenge. Uconinvest is not the only shareholder in JTL that was allegedly harmed by Defendants' conduct. JH, which remains the majority shareholder in JTL, incurred the exact same alleged pro rata injury as a result of the alleged harms to JTL, and JH is not alleged to have received any compensation from the alleged RICO scheme.

Contrary to Plaintiffs' suggestion, a minority shareholder that is not compensated as part of the alleged RICO scheme does not suffer a cognizable direct RICO injury. Plaintiffs' reliance on *Natomas Gardens Inv. Grp. LLC v. Sinadinos*, No. CIV.S-08-2308FCD/KJM, 2009 WL 1363382 (E.D. Cal. May 12, 2009), for that proposition is misplaced. There, the court held that minority shareholders in two limited liability companies could pursue RICO claims premised on embezzlement of the companies' assets because the plaintiffs "were allegedly the only investors that did not benefit from defendants' RICO violations." *Id.* at *12. Each company had only one other investor, a majority owner that was alleged to have profited from the wrongdoing. *See id.* at

*1-2. Here, by contrast, Uconinvest is not the "only investor" in JTL that was allegedly harmed by Defendants' conduct—as just explained, JH suffered the same alleged indirect harm as Uconinvest. Indeed, Plaintiffs themselves emphasize that their Complaint alleges "the systematic looting of a U.S.-based charitable endowment" (Opp. 1)—that is, NGF, through its ownership in JH and indirect ownership in JTL. Thus, *Natomas Gardens* is readily distinguishable.

In any event, *Natomas Gardens* is an outlier decision that fundamentally misapplies the distinction between indirect, derivative injuries to a shareholder plaintiff and the "separate and distinct" injuries that may be pursued directly by a shareholder. As a recent decision from the Central District of California explains, the *Natomas Gardens* court erred because "[it] did not examine whether the injury was to the corporation as a whole but, instead, compared injuries to the majority and minority shareholders." *Khazai v. Grover*, No. 2:22-CV-00100-SPG-KS, 2023 WL 12036688, at *4 (C.D. Cal. Apr. 20, 2023). The proper analysis turns on whether the shareholder plaintiff "has alleged an injury to the company itself," in which case the alleged injury is indirect, and a plaintiff cannot avoid that test by alleging that another shareholder "would not feel the loss because it was the alleged bad actor." *Id.*; *see also, e.g.*, *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (holding that "[a] stockholder's claimed direct injury must be independent of any alleged injury to the corporation," in the sense that a plaintiff "must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation"); *C.D.S., Inc. v. Zetler*, 288 F. Supp. 3d 551, 560 (S.D.N.Y. 2017) (shareholder plaintiff could not bring direct claim for "harms suffered by the company," even though he was the only shareholder who was not also a shareholder in the defendant company that benefited from challenged transactions).

Numerous other RICO decisions have applied the same rule to hold that a shareholder plaintiff cannot pursue a claim for injury to a company by alleging merely that other shareholders benefited from the alleged scheme. Indeed, Plaintiffs' lead case, *Manson*, 11 F.3d 1127 (cited at Opp. 13, 16), offers a straightforward illustration. There, the Second Circuit held that a shareholder plaintiff had no direct RICO claim even though the only other shareholder in the company was alleged to have participated in the RICO scheme. *See id.* at 1131. In explaining that conclusion, the court noted that the other shareholder had "also sustained losses in the value of her shares" as a result of harm to the company, and that both shareholders had "sustained the same injury with respect to the value of their shares." *Id.* It did not matter that, unlike the plaintiff shareholder, the other shareholder would also have received some offsetting benefit from her participation in the alleged scheme.

The Eighth Circuit reached the same conclusion in *Harris v. Orange S.A.*, 636 F. App'x 476, 482 (11th Cir. 2015), which involved allegations that three of the four shareholders in a corporation had siphoned away assets to a new company in which they were also shareholders, to the detriment of the fourth shareholder in the original company. *See id.* at 482. The court held that the excluded shareholder could not pursue a direct claim against the other three because she "ha[d] not suffered a distinct injury" from the company in which she was a shareholder, even though she was the only minority shareholder that did not benefit from the challenged transactions. *Id.* at 483. Other cases are to the same effect.[1] Thus, Plaintiffs cannot manufacture a direct injury by

---

[1] *See, e.g.*, *At The Airport v. ISATA, LLC*, 438 F. Supp. 2d 55, 65 (E.D.N.Y. 2006) (holding that LLC member could not bring direct claim based on harm to LLC because "the plaintiff's injury is the same as that of the other member," and observing that was "true even though [the LLC's] other member . . . and its managers are alleged to have participate[d] in the wrongdoing"); *Nordberg v. Lord, Day & Lord*, 107 F.R.D. 692, 698 (S.D.N.Y. 1985) (shareholder plaintiffs had no direct RICO claim because "[a]ny injury to plaintiffs' holdings . . . resulting from defendants' alleged wrongful conduct 'fell alike' [] on other shareholders" even though the other shareholders

suggesting that other shareholders of JTL benefitted from the alleged RICO scheme while Plaintiffs were excluded.

Finally, Plaintiffs cannot state a direct injury by alleging that other minority shareholders in JTL had their shares purchased by Yessenov, whereas Uconinvest was not able to sell its shares. *See* Opp. 15. For starters, that theory cannot be squared with Plaintiffs' assertion that Defendants have engaged in a scheme aimed at "the systematic looting of a U.S.-based charitable endowment." Opp. 1. Despite that assertion, Plaintiffs allege that that they were directly harmed because they were "excluded" from the very transactions they now claim were RICO violations. In other words, Plaintiffs are invoking the RICO statute in an attempt to secure their own share in what they describe as unlawful "looting" in violation of RICO. Tellingly, Plaintiffs do not cite any case law supporting that perverse result.

More fundamentally, Plaintiffs offer no coherent basis to conclude that one shareholder is harmed by another shareholder's ability to sell his shares on allegedly more favorable terms. Plaintiffs refer (theatrically) to the "effective expropriation" of Uconinvest's 2.3% shareholding in JTL (Comp. ¶ 118), but the truth is that Uconinvest continues to hold its shares in JTL, which continue to represent the same indirect pro rata interest in the company's assets as they always have, with precisely the same rights. *See id.* ¶ 10 (alleging that Uconinvest currently "holds" a "minority equity interest in JTL"). Uconinvest held the very same ownership interest in JTL both before and after the other shareholders' transactions with Yessenov.

At most, Plaintiffs could perhaps argue that the ability of other shareholders to sell their shares to Yessenov on allegedly more favorable terms represents a side payment from Yessenov

were among the defendants); *Ahn v. Hanil Dev., Inc.*, 471 F. App'x 615, 617 (9th Cir. 2012) (minority shareholder could not pursue direct RICO claim against other shareholders that were alleged to have defrauded the corporation of its assets).

in return for the JTL settlement. But that argument would merely place Plaintiffs in the same position as the minority shareholders whose claims were rejected by the Tenth Circuit in *Bixler v. Foster*, 596 F.3d 751 (10th Cir. 2010). There, the court specifically rejected the plaintiffs' argument that they could establish a direct RICO injury by alleging that "the majority shareholders received personal compensation for arranging" a corporate transaction that depleted the company's assets, "while the minority shareholders, including plaintiffs, did not." *Id.* at 757-58. The Tenth Circuit explained that the plaintiffs alleged only that "the minority shareholders suffered a diminution in value of their corporate shares without receiving the same monetary compensation the majority shareholders received," and "[s]uch an injury is not direct and personal for RICO purposes but is, rather, an injury to the corporation." *Id.* at 757. For the same reasons, Plaintiffs cannot establish a direct injury here by alleging that other shareholders received side compensation for arranging the settlement that Plaintiffs contend reduced the value of their JTL shares. Thus, none of Plaintiffs' allegations relating to JTL can support a direct RICO claim.[2]

### 2.    Plaintiffs' Claimed Share-Value Injury Is Also Impermissibly Foreign

Plaintiffs also cannot demonstrate that their allegations of diminution in the value of Uconinvest's JTL shares, even if otherwise actionable, would establish the "*domestic* injury" that is required to pursue a RICO claim. *Percival Partners Ltd. v. Nduom*, 99 F.4th 696, 702 (4th Cir. 2024) (emphasis added); *see also* Memo. 10-12.

Plaintiffs respond by emphasizing (Opp. 17-18) that they have alleged racketeering conduct in the United States. But that is irrelevant to the Jysan Group Defendants' argument here.

---

[2] Plaintiffs argue that, in *Bixler*, "the Tenth Circuit found no direct RICO injury because *all* minority shareholders were equally excluded from compensation." Opp. 14. But nothing in the Tenth Circuit's opinion supports that characterization. Rather, the Tenth Circuit held that the plaintiffs' injuries were impermissibly indirect because they "were based on the diminution of the value of their . . . shares, and not on direct injury to them." 596 F.3d at 758. The same is true of Plaintiffs' alleged injuries here.

7

As the Fourth Circuit has explained, the requirement that the defendant's conduct must have "inflicted a *domestic* injury" is "a distinct and independent inquiry" from the location of the defendant's alleged wrongdoing, and "[a]llowing the location of the racketeering conduct to dictate whether an injury is domestic would conflate the two inquiries." *Percival Partners Ltd.*, 99 F.4th at 702 (emphasis added).

With respect to the requirement of a domestic injury, Plaintiffs cite a series of cases in which the plaintiffs' injuries were deemed to have the requisite connection to the United States. *See* Opp. 16-17. But Plaintiffs do not identify a single case that bears even a passing resemblance to this one, where the principal harm that Plaintiffs allege is diminution in value of the equity shares of a *UK* company resulting from an allegedly improper transfer of that *UK* company's assets located in *Kazakhstan* to an individual located in *Kazakhstan*.

Nor can Plaintiffs establish a domestic injury by suggesting that "the injury alleged is . . . to Plaintiffs' ownership interests in JTL itself, which were held through Virginia-based Uconinvest." Opp. 19. As explained above, none of the allegations in the Complaint establish any effect at all on Uconinvest's ownership interests in JTL. *See* pp. 2-7, *supra*. And even if Plaintiffs could somehow establish a direct injury based on compensation paid to other shareholders (which they cannot, for the reasons explained above), that injury would still be a fundamentally foreign one. JTL is a UK corporation, and as Plaintiffs have acknowledged in the pending UK litigation that they initiated, the relationships of JTL's shareholders vis-à-vis one another are governed by English corporate law. *See* Memo. Ex. 5 ¶ 63; Memo. 11-12. There is thus no "reason to expect that United States law would protect" against this form of foreign injury. *Percival Partners Ltd.*, 99 F.4th at 704.

### 3.    Plaintiffs' Allegations of Fraudulent Acquisition of JTL Shares Are Barred by the PSLRA

As our opening memorandum explained (at 12-14), the Private Securities Litigation Reform Act ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737 (1995), expressly bars any attempt to base RICO liability on allegations that Mr. Wahid fraudulently acquired Orynbayev's stock in JTL. *See* 18 U.S.C. § 1964(c) ("no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962"). Plaintiffs do not meaningfully contest that conclusion. Instead, Plaintiffs concede that they "do not 'rely upon' Wahid's fraud 'to establish' a RICO violation," and they urge that even if the alleged fraud "were not itself a RICO predicate act, it nonetheless provides context for Defendants' other misconduct and targeting of Plaintiffs." Opp. 20.

Even if Plaintiffs were correct that these allegations could provide relevant "context," their concession squarely forecloses any attempt to deploy their allegation that "Wahid defrauded Mr. Orynbayev into transferring half of his JTL shares" to somehow support the conclusion that Plaintiffs have alleged "direct and personal" injuries. Compl. ¶ 138. The Supreme Court has held that "[a]ny recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985); *see also, e.g.*, *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) ("RICO provides a civil remedy only to those persons injured 'by reason of' the defendant's predicate acts."); *Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216, 219 (S.D.N.Y. 2002) ("Failure to allege that the specifically identified RICO predicate acts proximately caused plaintiff's injury is ground for dismissal at the pleading stage."). Plaintiffs thus cannot maintain that the allegedly fraudulent acquisition of Orynbayev's JTL stock is a source of direct RICO harm while conceding that, in light of the PSLRA bar, those allegations do not state a RICO predicate act. The PSLRA

9

bar cannot be evaded by this kind of artful pleading. *Cf. Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1249 (11th Cir. 2016) (holding that a plaintiff may not "dodge" the PSLRA bar by repackaging allegations "that would have been actionable as securities fraud" as other predicate acts); *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (same); *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 278-79 (2d Cir. 2011) (same).

### 4.    Plaintiffs' Remaining Allegations Do Not State Any Cognizable Injury to Business or Property

Plaintiffs' last-ditch effort (Opp. 21-22) to ground RICO liability on what the Complaint describes as "non-financial harms" (Compl. ¶ 122) fares no better. Plaintiffs do not—and cannot— argue that RICO provides a cause of action to address non-financial harms to a plaintiff. The plain text of the statute makes clear that RICO provides a private cause of action to remedy injuries to the plaintiff's "business or property." 18 U.S.C. § 1964(c). And binding case law confirms that this limitation excludes non-financial harms from RICO's ambit. *See Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 594 (2025).

Plaintiffs instead seek to rewrite their Complaint to assert cognizable RICO injuries. They urge (Opp. 21) that there can be an injury to a plaintiff's "business or property" if "reputational or professional injuries produce concrete, pecuniary harm—such as lost business opportunities, clients, or income." But the Complaint does not identify any such "concrete pecuniary harm" resulting from the alleged injuries to Orynbayev's reputation. Rather, the Complaint alleges only in the most general terms that Orynbayev has been "exposed . . . to reputational harm in the international investment and policy communities." Compl. ¶ 119. That is presumably why the Complaint itself *concedes* that this "reputational injury" is a form of "non-financial harm." *Id.* ¶ 122. Particularly in light of that characterization, Orynbayev's alleged reputational injuries plainly cannot support a RICO claim.

10

Plaintiffs also err in relying (Opp. 21-22) on Orynbayev's legal fees in responding to JH's action in the Fairfax Circuit Court as a form of cognizable financial harm. That argument is squarely foreclosed by Plaintiffs' concession that they "do not claim the lawsuit itself is a predicate act." Opp. 21. Once again, the Supreme Court has held that "[a]ny recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts." *Sedima, S.P.R.L.*, 473 U.S. at 497. Plaintiffs thus cannot claim the costs of the allegedly retaliatory Fairfax action as cognizable RICO damages without demonstrating that the litigation itself constitutes a RICO predicate act.

The Second Circuit's decision in *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158 (2d Cir. 1993) (cited at Opp. 22), does not undermine that conclusion. In *Stochastic Decisions*, the plaintiff proved a RICO scheme to impede the collection of a judgment by means of multiple acts of wire fraud and mail fraud. *Id.* at 1163-64. The Second Circuit held that, on these facts, the plaintiff could recover the attorney's fees it had incurred in its collection efforts, as those fees were "proximately caused by a RICO violation." *Id.* at 1167. Thus, in *Stochastic Decisions* the recoverable fees were proximately traceable to the defendants' RICO predicate acts. That decision offers no support for Plaintiffs' attempt to recover fees that *concededly* lack any such proximate connection to alleged RICO predicates. Instead, this case is governed by the settled rule—which Plaintiffs do not challenge—that if "a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, *such litigation activity alone cannot constitute a viable RICO predicate act.*" *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (emphasis added); *see also, e.g.*, *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003).

In any event, Plaintiffs' attempt to recover for these fees is barred by the Fairfax Circuit Court's finding that JH's litigation was *not* frivolous and was *not* improperly motivated. *See* Memo. 15-16. Instead of directly addressing that finding, Plaintiffs seek to change the subject by arguing that they can recover without a showing of any improper litigation conduct merely by establishing a connection to a "broader racketeering enterprise." Opp. 22. As just explained, however, that is not the law: a plaintiff's RICO injury must actually derive from RICO predicate acts. *See Sedima, S.P.R.L*, 473 U.S. at 497. Orynbayev's legal fees therefore do not constitute cognizable RICO harm.

## B.    Plaintiffs Fail to Plead RICO's Pattern Requirement

In arguing that the Complaint's allegations satisfy RICO's "pattern" element, Plaintiffs fail to distinguish the Tenth Circuit's persuasive decision in *Bixler*. Plaintiffs contend that *Bixler* involved only "one transaction," whereas their Complaint alleges "numerous predicate acts over multiple years." Opp. 23. But that is not an accurate characterization of the facts alleged in *Bixler*. To the contrary, the plaintiffs in *Bixler* alleged that the company in which they were minority shareholders was divested of its ownership interest in valuable mining rights through the sale of those rights to another corporation, followed by a separate corporate merger that was alleged to be "a fraudulent means of transferring the mining claims to a third entity." 596 F.3d at 755. The plaintiffs also alleged that corporate insiders were "highly compensated for arranging the transaction," and that the defendants had pursued frivolous litigation to interfere with the plaintiffs' pursuit of their legal rights. *Id.*

In short, *Bixler* involved a series of interrelated transactions that were alleged to be fraudulent, as well as alleged litigation misconduct directed against the plaintiffs—no different from Plaintiffs' allegations here. The Tenth Circuit nonetheless affirmed dismissal because the alleged conduct did not show that the defendants had engaged in anything more than "a single

12

scheme to accomplish the discrete goal of transferring . . . mining interests to another corporation." 596 F.3d at 761. The same is true here, where Plaintiffs allege a "single scheme" to achieve a "discrete goal"—in this case, allegedly to "loot" defendant NGF. The Complaint thus does not "allege[ ] the type of activity that RICO was enacted to address." *Id.* (quoting *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992)) (alteration in original).

### C.      Plaintiffs Fail to Plead a RICO Enterprise

Plaintiffs' opposition only reinforces their inability to plead a coherent "association-in-fact enterprise" with a "structure" of its own. *Boyle v. United States*, 556 U.S. 938, 945–46 (2009). Indeed, the opposition makes clear at the outset that Plaintiffs are alleging "systematic looting of a U.S.-based charitable endowment." Opp. 1. If that is Plaintiffs' theory, however, there is no logical reason for including JTL, JH, and NGF as members of the alleged RICO enterprise. The core allegation is that JTL's assets have been dissipated, thereby indirectly injuring JH and then NGF, as the ultimate majority owner of JTL. But "a victim corporation 'drained of its own money' by pilfering officers and employees could not reasonably be viewed as the enterprise *through* which employee persons carried out their racketeering activity." *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 267 (3d Cir. 1995) (emphasis original). "Rather, in such an instance, the proper enterprise would be the association of employees who are victimizing the corporation, while the victim corporation would not be the enterprise, but instead the § 1962(c) claimant." *Id.*; *see also Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531, 561 (E.D. Pa. 2019) ("the victim and enterprise may not be the same").

Aside from JTL, JH, and NGF—alleged *victims* of the supposed RICO scheme—Plaintiffs' alleged RICO enterprise includes (i) officers and directors of JH and JTL and (ii) Yessenov. But Plaintiffs' reliance on "defined roles among directors and entities" (Opp. 24) suggests that they would view *every* corporate board as a RICO enterprise. That is not the law. *See, e.g., Cruz v.*

13

*FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (a plaintiff does not state a RICO enterprise "by alleging that a corporation has violated the statute by conducting an enterprise that consists of itself plus all or some of its officers or employees"); *Manhattan Telecomms. Corp. v. DialAmerica Mktg., Inc.*, 156 F. Supp. 2d 376, 382 (S.D.N.Y. 2001) (rejecting RICO claim where "alleged enterprise ha[d] no organizational pattern or system of authority, other than that embedded in the organization of" the corporate defendant) (internal citation omitted).

Nor does the Complaint allege any structural or other connection between the proposed enterprise and Yessenov, who the Complaint itself alleges was holding himself out as an agent of the Government of Kazakhstan that had launched a relentless campaign to seize JTL's Kazakh assets. *See* Compl. ¶¶ 32-34, 55. Although the Complaint alleges a series of transactions involving Yessenov, those allegations "show[] only that the defendants had a commercial relationship, not that they had joined together to create a *distinct entity*" as would be required to establish a RICO enterprise. *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013) (emphasis added); *see also Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (RICO "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs").

Accordingly, the Complaint fails to plead the existence of a RICO enterprise and should be dismissed for this reason as well.

### D. Plaintiffs' Allegations of Individual Predicate Acts Are Insufficient

Plaintiffs also fail to rehabilitate their insufficient allegations of individual RICO predicate acts. With respect to wire fraud, Plaintiffs do not satisfy Federal Rule of Civil Procedure 9(b)'s obligation to plead fraud with particularity. Plaintiffs contend that they have met their burden by identifying "specific transmissions" with "the actors, timeframe, and deceitful objective." Opp. 26. But Rule 9(b) requires particularized allegations of the "contents of the false representations,"

14

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999), so that a defendant can understand what is alleged to be false and thus formulate a defense. *See also Van Velzer v. Amegy Bank*, 713 F. App'x 377, 378 (5th Cir. 2018) (noting that, in order to satisfy Rule 9(b), a RICO complaint alleging fraud must "explain why the statements were fraudulent") (citation omitted). The Complaint here is plainly insufficient on that score.

As for money laundering, Plaintiffs suggest that they have met their pleading burden under Rule 12(b)(6) by alleging "concrete financial transactions involving known senders, recipients, and purposes." Opp. 26. But Plaintiffs do not even attempt to explain how their allegations demonstrate violations of the federal money laundering statutes. The same is true for Plaintiffs' allegations of obstruction of justice and witness retaliation, as to which Plaintiffs refer to "specific acts of interference and reprisal" (*id.*) without seeking to connect them to any statutory violation.

Finally, with respect to the allegations of tax offenses, Plaintiffs simply ignore the Jysan Group Defendants' arguments for dismissal. Plaintiffs insist that their "allegations plainly describe fraudulent filings made with intent to deceive U.S authorities." Opp. 27. But they do not even attempt to identify factual allegations from which such an intent could be inferred, and in all events they do not explain how Plaintiffs could have been harmed by tax offenses directed at the government. *See* Memo. 18.

### E. Plaintiffs' RICO Conspiracy Claim Should Be Dismissed Because the Substantive RICO Claim Fails to State a Claim

Plaintiffs do not contest the Jysan Group Defendants' showing (Memo. 18-19) that Count II, for RICO conspiracy, necessarily rises or falls with the substantive RICO theories alleged in Count I. Instead, Plaintiffs urge that Count II should be permitted to proceed because "the Complaint adequately pleads a substantive [RICO] violation." Opp. 27. That is incorrect for all of the reasons just explained. Count II should accordingly be dismissed along with Count I. *See, e.g.*,

*GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001); *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 806 (6th Cir. 2015); *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006).

## II.    PLAINTIFFS' CLAIM FOR VIRGINIA BUSINESS CONSPIRACY SHOULD BE DISMISSED

Count III, for Virginia-law business conspiracy under Virginia Code § 18.2-500, should be dismissed on jurisdictional grounds because Plaintiffs' federal-law RICO claims are subject to dismissal. *See* Memo. 19. Plaintiffs offer no basis for the Court to exercise supplemental jurisdiction over Count III if the federal-law claims are dismissed. *See* Opp. 27. Accordingly, if the Court agrees that Counts I and II should be dismissed, then Count III should be dismissed as well. *See* 28 U.S.C. § 1367(c)(3).

On the merits, Plaintiffs fundamentally misunderstand the operation of Virginia Code §§ 18.2-499 and -500. Those statutes address only "conspiracies resulting in business-related damages." *Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir. 1985). Thus, the aim of the alleged conspiracy must be to interfere with the affairs of a discrete business operation, such as "(1) interfering in business activity such as boycotts and pickets; (2) injuring a company's tradename and good will; (3) stealing customer lists and trade secrets." *Nationwide Mut. Fire Ins. Co. v. Jones*, 577 F. Supp. 968, 970 (W.D. Va. 1984). The Complaint in this case alleges nothing of the sort.

Plaintiffs' Opposition largely repackages their meritless defense of their RICO claims to support their claim for business conspiracy. Contrary to Plaintiffs' submission, however, their allegations of harm *to JTL* are fundamentally indirect and derivative, for the reasons explained above. *See* pp. 2-7, *supra*. It is well-settled—and Plaintiffs do not contest—that a claim under Section 18.2-500 cannot be based on indirect injury in the form of diminution in value of the equity

16

shares of another business entity. *See Simmons v. Miller*, 544 S.E.2d 666, 674 (Va. 2001); *Lexcadia Cap., LLC v. Next Generation Fund*, LLC, 71 Va. Cir. 83, at \*9 (2006); Memo. 20. And in all events, an alleged conspiracy to interfere with a plaintiff's *investment* rights would not implicate the *business*-related injury that is a predicate to a claim under Section 18.2-500. *See Inman v. Klockner-Pentaplast of Am., Inc.*, 467 F. Supp. 2d 642, 653-54 (W.D. Va. 2006) (plaintiff could not pursue claim based on conspiracy "to divest him of his stock ownership" because that harm did not implicate a "business interest[]"). The same logic also forecloses Plaintiffs' suggestion (Opp. 28) that the financial costs of litigating JH's state-court suit against Orynbayev are cognizable injuries under Section 18.2-500. Those costs—incurred by Orynbayev personally in a suit for breach of his consulting agreement with JH—are unrelated to the operations of any discrete business. And Section 18.2-500 is not a catch-all vehicle for redressing all forms of alleged financial harm. *See Inman*, 467 F. Supp. 2d at 653-54 (holding that Section 18.2-500 does not address a plaintiff's employment interests, even though loss of employment obviously results in financial harm).

Finally, Plaintiffs err in invoking (Opp. 28) the Complaint's allegations of harm to Orynbayev's "reputation and standing as an international economic advisor." Compl. ¶ 119. Because the Complaint does not allege that Orynbayev "owned a company" involved in this industry, "did business as a separate organization," or "had a separate tax identification number," Orynbayev is alleging "damage only to his *personal* employment prospects." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012). Those allegations are insufficient because "Virginia's business conspiracy statute was not designed to provide treble damages for defamation suits cloaked as conspiracy claims." *Id.* And Plaintiffs do not even attempt to respond to the separate argument that they have not alleged a conspiracy "*for the purpose of* . . . willfully and

17

maliciously injuring another in his reputation." Va. Code § 18.2-499 (emphasis added). As our opening memorandum explained (at 21), the Complaint alleges that Orynbayev's reputation has been harmed based purely on association with Defendants' alleged "fraud and self-dealing," Compl. ¶ 119, not by any affirmative efforts by the Defendants to undermine Orynbayev's reputation. To state the obvious, even if these allegations of incidental harm to reputation were otherwise cognizable, they would offer no plausible basis to infer that Defendants acted with the forbidden purpose that is required for liability to attach under Section 18.2-500.

## III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

In the conclusion of their opposition, Plaintiffs seek leave to amend if any claim is dismissed in whole or in part. Opp. 29. That request should be denied.

As an initial matter, this kind of unexplained, perfunctory request for leave to amend is procedurally inadequate. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008). Plaintiffs do not suggest *how* they would amend, much less provide this Court with "a proposed amended complaint." *Id.* Moreover, "it is clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability." *Id.* At bottom, the Complaint is premised on allegations of harm that are impermissibly indirect and otherwise not cognizable under RICO. *See* pp. 2-7, *supra*. Those are fundamental flaws in Plaintiffs' Complaint, and Plaintiffs do not even attempt to explain how they could possibly be cured by pleading with greater care. Dismissal with prejudice is therefore warranted. *See Cozzarelli*, 549 F.3d at 630; *Johnson v. Navy Fed. Credit Union*, No. 1:22-CV-01451 (PTG/LRV), 2023 WL 6964052, at *5 (E.D. Va. Oct. 20, 2023) (denying leave to amend based on determination "that further amendment of this Complaint would be futile because no amendment can cure the deficiencies identified by the Court").

18

## IV.    DEFENDANTS EVANS AND BOERNER SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Plaintiffs also cannot establish personal jurisdiction over Defendants Evans and Boerner, who are citizens of foreign countries and are domiciled abroad, and are alleged to have participated in the RICO enterprise merely by approving certain corporate transactions in their roles as directors of JTL, a UK company. *See* Compl. ¶¶ 16-17.

As an initial matter, Plaintiffs invoke the wrong legal standard by seeking (Opp. 28-29) to establish that Evans and Boerner have constitutionally sufficient minimum contacts with the United States as a whole, rather than with this Virginia forum. As our opening memorandum explained (at 22 n.7), RICO authorizes nationwide service of process but not *international* service. *See* 18 U.S.C. § 1965(d) (process "may be served on any person *in any judicial district* in which such person resides, is found, has an agent, or transacts his affairs") (emphasis added). Thus, personal jurisdiction over a foreign defendant must be based on Virginia's long-arm statute, Va. Code § 8.01-328.1. *See, e.g.*, *Stauffacher v. Bennett*, 969 F.2d 455, 460-61 (7th Cir. 1992); *Brink's Mat Ltd. v. Diamond*, 906 F.2d 1519, 1523 (11th Cir. 1990). The Fourth Circuit's decision in *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997) (cited at Opp. 28), is inapposite because that case involved the exercise of jurisdiction in South Carolina over defendants that were domiciled in New Hampshire and Florida. *See id.* at 621, 626-27. In that scenario, RICO's authorization of nationwide service of process requires a court to examine a defendant's contacts with the United States as a whole. *See id.* at 627. Because no comparable provision authorizes international service, Virginia's long-arm statute provides the only conceivable source of authority to exercise personal jurisdiction over Evans and Boerner, which means that the inquiry focuses on their contacts with Virginia. Accordingly, Plaintiffs must "establish that the defendant expressly aimed his tortious conduct at the forum, *such that the forum can be said to be the focal point of*

19

*the tortious activity.*" *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009) (internal citations omitted).

Under the proper test, it is clear that this Court lacks personal jurisdiction over Evans and Boerner. Plaintiffs assert (Opp. 29) that Evans and Boerner "authoriz[ed] and profit[ed] from the looting of a U.S.-based nonprofit" and "retaliate[d] against a U.S. resident and his U.S. entity." But those assertions, even if credited, would not establish that *Virginia* is the focal point of any alleged tortious activity. As Plaintiffs acknowledge (Opp. 28), the "U.S.-based nonprofit" is NGF, a *Nevada* entity. And although Uconinvest is a Virginia entity, Orynbayev himself is a Florida resident. Compl. ¶ 9. There is accordingly no basis to conclude that any tortious conduct was "expressly aimed . . . *at the forum*." *Consulting Eng'rs Corp.*, 561 F.3d at 280 (emphasis added).

Moreover, Plaintiffs studiously ignore the limited role that Evans and Boerner allegedly played in the putative scheme. Evans and Boerner are alleged to have participated in the RICO enterprise merely by approving, in their role as JTL directors, corporate transactions in which JTL (i) entered into its settlement with Yessenov and (ii) made allegedly improper compensation payments. *See* Compl. ¶¶ 16-17. To the extent those decisions are alleged to have had any effect in Virginia at all, it is only indirectly through the investment of Uconinvest (a Virginia limited liability company) in JTL's equity shares. That sort of attenuated effect does not suggest that Virginia was a "focal point" of any tortious activity, and it falls far short of Plaintiffs' burden to demonstrate that Evans and Boerner purposefully directed their purported actions to Virginia and that the exercise of specific jurisdiction over them would be reasonable under the circumstances. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).

## CONCLUSION

For the reasons discussed above and those stated in our opening memorandum, the Complaint should be dismissed with prejudice.

20

Dated: November 25, 2025

Respectfully submitted,

*/s/ Donald Burke*
Donald Burke (VSB No. 76550)
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
Tel: (202) 303-1037
Fax: (202) 303-2000
DBurke@willkie.com

Tariq Mundiya
(admitted *pro hac vice*)
Jeffrey B. Korn
(admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
Fax: (212) 728-8111
TMundiya@willkie.com
JKorn@willkie.com

*Counsel for the Jysan Group Defendants*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on this November 25, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ Donald Burke
Donald Burke (VSB No. 76550)
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
Tel: (202) 303-1037
Fax: (202) 303-2000
DBurke@willkie.com